KRAMER v. BUFFALO UNION FURNACE CO.

(Supreme Court, Appellate Division, Fourth Departmnet. May 5, 1909.)

1. CORPORATIONS (§ 507*)—INVALID SERVICE OF PROCESS—REPUDIATION.

The validity of service of summons on one as managing agent of a corporation does not depend on whether he ever delivered it to the corporation or not, and, if service is not authorized to be made on the person delivering it to defendant, it is void, and defendant may insist that it will not be bound thereby, especially where it promptly repudiates such service.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 507.*]

2. CORPORATIONS (§ 507*)—ACTIONS—PROCESS—SERVICE—"MANAGING AGENT."

An assistant superintendent of a corporation had no authority in conducting its business, but was limited by such orders or directions as were given him by the general superintendent to whom he reported all his actions for approval. He was not authorized to take any independent action, and notwithstanding his designation, it was apparent that he was only a foreman who went to the company's plant each morning with other workmen, made a general inspection, and set the men to work and presumably saw that they performed their duties. *Held*, that he was not a "managing agent" within the meaning of Code Civ. Proc. § 431, subd. 3, providing that service of summons can be made on such an agent.

[Ed. Note.—For other cases, see Corporations, Dec. Dig. § 507.*

For other definitions, see Words and Phrases, vol. 5, pp. 4320–4323.]

Appeal from Special Term, Erie County.

Action by John Kramer, as administrator of Janos Urgyan, against the Buffalo Union Furnace Company. From an order denying a motion to set aside the service of the summons, defendant appeals. Reversed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, KRUSE, and ROBSON, JJ.

Alfred L. Becker, for appellant.
Charles Newton, for respondent.

McLENNAN, P. J. The defendant is a domestic corporation, and service of the summons herein was sought to be made by delivering a copy thereof to one John J. Sammon, who was in defendant's employ, and who was designated as "assistant superintendent."

The sole question presented by this appeal is: Was Sammon a person upon whom a valid service of a summons could be made in an action against the defendant within the meaning of subdivision 3 of section 431 of the Code? Subdivision 3 provides, in substance, that personal service of a summons may be made upon a domestic corporation by delivering a copy thereof within the state "to the president or other head of the corporation, the secretary or clerk to the corporation, the cashier, the treasurer, or a director or managing agent." Concededly Sammon was not "the president or other head" of the defendant, "secretary or clerk" to it, "the cashier, the treasurer, or a director" of the defendant. Was he its "managing agent"? If not, the service of the summons upon him was void, and the order appealed from should be reversed. The designation of Sammon as "assistant superintendent" made by the defendant is not the office or position of any person specified in the statute upon whom service can be made. So that the plaintiff was in no manner misled. Sammon was not known, called, or designated "managing agent" by the defendant, but "assistant superintendent," by which title he had been known ever since he entered into defendant's employ. The fact that the summons was delivered by Sammon to the defendant is immaterial. If Sammon was "managing agent," service upon him was good, and was binding upon the defendant, wholly irrespective of what he may have done with the paper after the same was delivered to him. The converse of the proposition is equally true. If service was not authorized to be made upon Sammon because he was not "managing agent," the service was void, and the defendant had the right to insist that it would not be bound by such service, especially where as in this case it acted promptly in repudiating such service.

In the case of Eisenhofer v. New Yorker Zeitung Publishing Company, 91 App. Div. 94, 86 N. Y. Supp. 438, the court in discussing this proposition said:

"But it is urged that the service made accomplished the object of the statute, inasmuch as the papers served ultimately reached the desired place, which is evidenced by the fact that the defendant, through its counsel, appeared specially for the purpose of moving that the service be set aside. Of course, the service of process is to give notice to the party proceeded against, and, if service which accomplishes that end answers the requirements of the statute, then this service is good. But it does not, and for the obvious reason that the Legislature has seen fit to prescribe the manner in which jurisdiction of a domestic corporation may be obtained, and, where it is decreed that jurisdiction can be obtained only in a certain way, that way must be followed to the exclusion of all others, and, unless it is, the service is ineffectual for any purpose. The Legislature has the power to say how jurisdiction can be obtained. It has so declared, and it is for the courts to enforce its mandate, and not prescribe some other one. To say that service of process upon some one not authorized by statute is good because it ultimately reaches the person intended is to constitute the courts a legislative body instead of one authorized to construe and enforce statutes made by the Legislature."

In the case of Winslow v. Staten Island Rapid Transit Railway Company, 51 Hun, 298, 300, 4 N. Y. Supp. 169, 170, where the same question was being considered, Justice Van Brunt, writing the opinion for the court, said:

"But, where the statute prescribes that jurisdiction is to be obtained in a particular way, then the requirements of the statute must be complied with or jurisdicion cannot be acquired. If there are any hardships under the law, it is not for the courts to amend the statute, because that is a duty which is imposed upon the Legislature."

So that we come to the consideration of the question whether Sammon was a "managing agent" within the meaning of the statute. The duty which he performed and the position which he occupied is fully set forth in his affidavit, and there is no controversy upon the subject. He states:

"I go to the company's plant at Hamburg street between 6 and 7 o'clock in the morning, and make a general inspection of the plant, taking notice of any particular thing that should be done around the plant. I then see that those things are done, going to the general superintendent about them when they are of special importance. During the day I direct, under the general supervision and authority of the general superintendent, the work of some 400 men employed at the plant. If occasion demanded, I would hire and discharge men, always acting under the general supervision of the general superintendent."

He further states that such have been his duties and his employment for a year and a half, and ever since he entered into the employ of the defendant; that his position was designated as "assistant superintendent." He further says, and it is uncontradicted:

"There is a general superintendent employed by the company who has charge of the operation of this plant. I am under him and responsible to him as assistant superintendent, and I report to him and receive from him directions and instructions as to the lines along which I am to work."

The duties which he has performed, as above set forth, he says, were assigned to him by the general superintendent, and were performed under his supervision and oversight. Sammon further says:

"I have a desk in the general superintendent's office, and it is my office also. I consult with him about the company's affairs and receive directions from him, and with and from no other officer or employé of the company. He is the only person to whom I report and am responsible."

It further appears that, when the service of the summons was made upon Sammon, he was not in the general superintendent's office, but was over at the charcoal furnace, and that the general superintendent was in and about the plant and that his office was open, which was in the same building that the secretary's office was in.

Sammon further states:

"I am not an officer, director, or stockholder of the company. I never at any time made any contracts for the company of any kind whatever, except hiring men, as I have stated, subject to the supervision of the general superintendent. I have never accepted service of any legal process in behalf of the company. I exercise no authority and perform no duties in behalf of the company except as I have above stated. I am not in any sense the managing agent of the company, but merely a foreman."

The affidavit of the general superintendent is made a part of the record, and he states that on the day when it was attempted to serve

the summons upon Sammon he, the general superintendent, was present and attending to his duties at his office and in and about the plant of the defendant company. There is also an affidavit attached, made by the secretary, in which he says that on the day in question he was present in his office, which was in the same building as the office of the general superintendent; that he was at his office and place of business attending to his duties.

Under this state of facts, it seems to me clear that Sammon was not a "managing agent" within the meaning of the section of the Code. It appears without contradiction that Sammon had no general authority in the conduct of the defendant's business. His authority was limited by such orders or directions as were given him by his superior, the general superintendent. He was not authorized to take any independent action in the premises. All he did was subject to the approval of the general superintendent, to whom he was required to make report of all his actions. Notwithstanding the designation of Sammon as assistant superintendent, it is perfectly apparent that he was only a foreman. He went to the plant each morning, arriving as early as the other workmen, made a general inspection, set the men to work, and presumably was charged with the duty of seeing to it that they performed their respective duties, but he was in no sense a "managing agent."

In the case of Winslow v. Staten Island Rapid Transit Railway Company, supra, it was sought to sustain the service of the summons on the ground that one Curry was a managing agent of the corporation. The court said at page 300 of 51 Hun, and page 169 of 4 N. Y. Supp.:

"In this we think the proof wholly fails. It is true that Curry was engaged in and about the business of the corporation, and that, in addition to his ordinary duties as clerk to the corporation, he was in the habit, as assistant treasurer, of drawing checks payable to the order of another clerk of the corporation. But there is no evidence whatever that he had any part in the management of the business of the corporation or that he exercised any authority as a managing agent."

In the case of Coler v. Pittsburgh Bridge Co., 146 N. Y. 281, 40 N. E. 779, the Court of Appeals set aside the service of the summons upon the express ground that while it appeared that the agent was a representative of the defendant, and that he was within this state on business of the defendant, it did not appear but that the scope of his authority was limited, practically holding in that case that it was necessary in order to bring such person within the meaning of the statute that the scope of his authority would be general. Vitolo v. Bee Publishing Co., 66 App. Div. 582, 73 N. Y. Supp. 273; Fontana v. Post Printing & Pub. Co., 87 App. Div. 233, 84 N. Y. Supp. 308.

The case of R. H. & L. R. R. Co. v. N. Y., L. E. & W. R. R. Co., 48 Hun, 190, upon which the plaintiff relies, is clearly distinguishable from the authorities referred to. In that case the person upon whom the service was made was a division superintendent of the defendant railroad company, and he had absolute authority within his own territory. Within that territory his agency was of a general character. That case would have been analogous if the person served had been assistant division superintendent. In the case at bar, as we have seen,

Sammon had no general supervision over the affairs of the corporation. He had no authority to manage the affairs of the corporation as its agent.

The order appealed from should be reversed, with $10 costs and disbursements, and the motion granted, with $10 costs.

Order reversed with $10 costs and disbursements, and motion granted with $10 costs. All concur.