[Civ. No. 264. Fourth Appellate District.—August 16, 1930.]

JOHN F. M. ROEHL, Respondent, v. THE TEXAS COMPANY (a Corporation), Appellant.

Charles C. Stanley and R. K. Barrows for Appellant.

Harvey H. Atherton for Respondent.

HAINES, J., *pro tem.*—The complaint of plaintiff and respondent John F. M. Roehl in the above cause having on July 26, 1928, been filed in the superior court, summons issued thereon and service was one day later attempted on defendant and appellant The Texas Company by delivery in San Diego County of a copy of the same annexed to a copy of the complaint to one C. L. Lorden, stated in the sheriff's return to be its "district managing agent." Defendant (now appellant) not having appeared or answered, its default was entered on August 9, 1928, and judgment against it followed on August 11, 1928.

Subsequently, on August 27, 1928, appellant, pursuant to notice of motion regularly given, appearing specially, moved

the court to quash the service on the ground that appellant is a corporation incorporated under the laws of California and that, at the date service was attempted, Lorden was not an officer nor president or other head of said corporation, nor a vice-president, secretary, assistant secretary, cashier or managing agent thereof. The court had before it in considering the motion the complaint, summons and return, judgment, appellant's notice of motion, the affidavit of one George G. Walker in support of the motion and those of plaintiff and respondent Roehl and of Walter C. Church and Cora F. Perrine in opposition thereto. The motion was denied, and from the order of denial the present appeal is prosecuted. The sole question to be decided, therefore, is whether delivery of copies of the summons and complaint to Lorden amounted to a valid service upon the appellant corporation.

The Walker affidavit is to the effect that The Texas Company, at all of the times involved, has been a California corporation, with its principal place of business at Los Angeles, and that he, Walker, is its assistant secretary; and that Lorden "is not a managing agent of said corporation, nor is he an officer of said corporation, and . . . is not the president or other head of said corporation, or a vice-president, or a secretary, or an assistant secretary, or a cashier, or managing agent thereof," that the corporation maintains offices at Los Angeles, "in which offices are its president, three vice-presidents and two assistant secretaries, upon each of whom summons may at all times be served during business hours," that "the business of the corporation consists of acquiring, holding and owning oil-bearing lands and interests therein, of operating oil wells and producing oil therefrom; of purchasing crude oil from others, of refining said oil and manufacturing various refined products therefrom; of purchasing other refined products; and of selling such products and crude oil at wholesale and at retail." Each branch of this business is stated to be conducted in California under the supervision and control of the officers of the corporation resident in Los Angeles, each branch "under the supervision, management and control of a separate manager thereof," and "that the officer and manager having charge and supervision over the branch of said business pertaining to the making of sales of said products,

is, and at all times herein mentioned was, C. L. Coppage, the sales manager of said corporation, and also a vice-president thereof." It is stated that Lorden "is an employee of the said corporation and of the sales department thereof; that his duties as such employee are performed in the County of San Diego; that the said County of San Diego is one of the group of counties in Southern California in which all matters pertaining to sales are under the immediate direction and control of W. M. Owen, district sales manager of said corporation for the Los Angeles district, and A. H. Pearsons, assistant district sales manager for said district," both, in turn, subject to the "supervision, direction and control of C. L. Coppage, general sales manager of said corporation, and two assistant sales managers of said corporation, whose offices and residences are in the city of Los Angeles, and whose jurisdiction and duties extend over the entire state of California and adjacent states, in so far as matters pertaining to sales are concerned, but none of them have any power or authority as to any other part of said corporation's business." It is further stated that Lorden "has no duties or functions connected with any branch of said company's business, other than sales of petroleum products; that as such employee he has no general powers or duties involving the exercise of judgment or discretion on his part, but in all such matters acts solely and entirely at the direction and under the control of said district sales manager and assistant district sales manager in said city of Los Angeles; and that in all matters requiring the exercise of such judgment and discretion, said Lorden is required by the rules of said corporation to request instructions and . . . to comply with such instructions; that in all important matters the said district sales manager and assistant district sales manager are required to consult with the said sales manager or one of said assistant sales managers before giving such instructions to said Lorden; that in no sense of the word is the said Lorden a managing agent or manager of the said corporation or of any department thereof."

The counter-affidavit of the plaintiff and respondent Roehl, sworn to on August 20, 1928, states that he has known Lorden for six months prior to that date and frequently had business transactions with him; that The Texas

Company had maintained at the foot of Crosby Street at San Diego since May 1, 1928, a place of business, with storage tanks, warehouses and office buildings; since when it has been, and is, there engaged in selling and distributing gasoline, kerosene and lubricating oil throughout the county; that its principal place of business is in the city of San Diego, "as above stated," that since May 1, 1928, Lorden "has been the manager of the defendant with reference to its operations in San Diego County, and has been in charge of the office and place of business of said defendant in the city of San Diego during said period of time; that during all of said period of time the said C. L. Lorden has held himself to the public and to the persons dealing with defendant company in the city of San Diego as the manager for the defendant in San Diego County," and that during said period Lorden "has entered into numerous contracts and agreements with various service station people for the sale and distribution of the products of the defendant in the city and surrounding territory and has arranged for and agreed upon the terms of various contracts for such purpose." Roehl further states that since June 1, 1928, he has had numerous transactions with The Texas Company in all of which Lorden represented it, claimed to be its manager, and to have authority to act for it, used his own judgment and discretion and of his own volition and without any reference to any officials of the corporation made, modified and agreed upon contracts and terms of the handling and sale of its products. It is further stated in Roehl's affidavit that since May 1, 1928, "the president, vice-president, secretary, assistant secretary or cashier of the defendant," (now appellant) "have not had any place of business in San Diego County," and that no one other than said Lorden "during said period of time" has claimed or held himself out to be the managing head of the business of the corporation being conducted in San Diego County; that Lorden has paid men working for the defendant (now appellant) corporation and signed checks in its name therefor and in all dealings and transactions with reference to the contract between himself, Roehl, and the defendant (now appellant) upon which the cause of action in the instant case is based, Lorden acted as the corporation's manager and representative and represented himself as such.

Affiant Church deposes that for the last eight years he has operated service stations at San Diego and distributed gasoline and lubricating oil; that he knows Lorden, referred to by him as the "agent of The Texas Company," and knew Lorden when he was also agent of a "California Petroleum Corporation"; that since about May 1, 1928, The Texas Company has taken over the business of that concern in San Diego County and been "engaged in the sale and distribution of gasoline, kerosene and lubricating oil," during which time Lorden has represented it and had charge of its business in San Diego County and been in charge of its distributing plant and office at the foot of Crosby Street in San Diego; that Church has had numerous transactions with The Texas Company between May 1, 1928, and August 1, 1928, in all of which Lorden has been its representative; that during this time Lorden has had numerous men working under him and under his supervision and has held himself out and been known as the manager of The Texas Company in San Diego County; that whenever Church called the office of The Texas Company and asked for the manager, Lorden answered; that he, Church, knows of no other person than Lorden "in general charge and supervision of the business and affairs of The Texas Company in San Diego County during said period of time"; that he, Church, has, during said period of time, entered into numerous transactions and agreements with The Texas Company, Lorden always arranging the terms, claiming the right to appear for and represent the company; that during all of said time Lorden was known in San Diego as the company's manager and the company had no office or headquarters in San Diego other than that in Lorden's charge.

The Perrine affidavit states that affiant has for more than a year, operated a service station in San Diego, and for several months known Lorden; that since about May 1, 1928, The Texas Company has been extensively operating in San Diego County in selling and distributing gasoline, kerosene and lubricating oil; and that, during that time its said place of business and office there has been managed and supervised by Lorden as its agent; that since May 1, 1928, the affiant has had various business dealings and transactions with said company, in which Lorden has represented it

and made contracts with her for the sale and distribution of its products; that in talking with her Lorden has told her that he was instructed by The Texas Company to use his judgment about making contracts and personally agreed upon their terms and provisions; that Lorden was generally known and recognized as managing agent of The Texas Company for San Diego County and held himself out to the public as such; that she introduced him to others as such and no protest was made; that, since May 1, 1928, he has been the manager in charge of the business of The Texas Company in San Diego County and there has been no other superintendent or manager of said company in charge there; that Lorden has paid out money and signed checks for said company; that in a conversation of even date with her affidavit (August 20, 1928), Lorden told her that he was authorized to represent The Texas Company in making contracts with service station people and that otherwise he would not have been retained in its service.

Appellant claims that even though Lorden had been its "district managing agent" there is, under the statute, no authority for making service of process, at least on a domestic corporation, by serving such a functionary; that in jurisdictions where service on a "district managing agent" is recognized as sufficient, such official is defined to be "a person invested with some general powers, with the privilege of exercising judgment and discretion, and having some control over corporate affairs at the place where the duties are performed"; that while the sheriff's return is some evidence that Lorden was appellant's "district managing agent," it is mere *prima facie* evidence, of the weakest sort, and only to be tentatively accepted, and completely met, here, by the Walker affidavit; that whatever Lorden was called, this affidavit, with its detailed statement about what the corporation's organization was, shows that his powers and duties did not measure up to that description, but that he was nothing more than an employee of the sales department, that he had nothing to do outside of it, and, even within it, had no place in the hierarchy of managers, nor any right to act in discretionary matters at all, nor to do anything but follow instructions. Appellant claims that the counter-affidavits are insufficient to refute in any particular the showing made by the Walker affidavit, or to

produce any conflict in the evidence; that those who signed them were in no position to know appellant's *modus operandi,* that what it is claimed that Lorden said about his powers is not competent evidence of the truth of his statements; that he may have had standing instructions about the matters as to which he appeared to be using his discretion, and that the fact, if such it be, that he undertook to use his discretion in making contracts or arrangements for the company is no proof that he was actually empowered to use it, or that the company was bound by his use of it; that the circumstances that appellant maintained no agent superior to Lorden in San Diego County is no proof that Lorden had the powers there which respondent claims that he had; and that the fact that he hired men and signed, in the name of the company, checks for their compensation, is inconsequential; that on no theory is there any support for the ruling that this service on Lorden was, as against appellant, valid or effective, that the court below erred in denying the motion to quash it, and that the order must, therefore, be reversed.

The statute of this state relating to service of summons upon domestic corporations (Code Civ. Proc., sec. 411) is that:

"The summons must be served by delivering a copy thereof as follows: 1. If a suit is against a corporation formed under the laws of this state: to the president or other head of the corporation, vice president, secretary, assistant secretary, cashier or managing agent thereof."

New York has, for many years, covered the subject by statute, which has been, from time to time, amended, but has continuously employed the term "managing agent" as among the persons to whom the summons may be delivered, though the context in which it occurs has varied.

In *Brewster* v. *Michigan Cent. R. Co.,* 5 How. Pr. (N. Y.) 183, 185, 186, it was said that:

"Every employment of another is an agency in a general sense of the term; and whenever such employment is accompanied by any discretion in the agent, he may be said to be in such general sense the managing agent."

It was held, however, that the managing agent upon whom summons may be served, "must be one whose agency extends to all the transactions of the corporation, . . . in

distinction from the management of a particular branch or department of its business." But in *Bain et al.* v. *Insurance Co.*, 9 How. Pr. (N. Y.) 448, an agent of an insurance company in charge of its office in the City of New York, a place different from its principal place of business, who had full power to receive premiums and issue policies binding on the company, was held to be such a "managing agent" that legal service of summons against the company might be made by serving him, the court saying that if such person be not a "managing agent" of the company within the meaning of the statute, "no other officer except the president can be," in which case the term would be confined to the person occupying the position of "head of the corporation," which plainly was not the legislative intent. In *Palmer* v. *Pennsylvania Co.*, 35 Hun (N. Y.), 369, which, however, was a case involving service on a foreign corporation, it was said that "the code does not specify the extent of the agency required to bind defendant by service of process, except that the person upon whom the service is made must be managing agent. Were the rule to be established . . . that the agent must have charge of the whole business of the corporation, the statute would be a dead letter, for such agency seldom if ever exists. *Every object of the service is attained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made.* The statute is satisfied if he be a managing agent to any extent." The decree in this case was affirmed by the Court of Appeals in 99 N. Y. 679. In *Barret* v. *American Tel. & Tel. Co.* [56 Hun, 430], 10 N. Y. Supp. 138, service of summons on a general superintendent of a telephone and telegraph company in charge of one of its departments, was held to be service on a "managing agent," the court saying that "the object of the legislature was to provide for such service upon an officer or agent of the company who should be charged with some general duty, and have some general control of the affairs of the corporation—one who should occupy a position of responsibility and have an interest in the general management and prosperity of the company; the whole end and aim being to have the process placed in the hands of a responsible person, who would yield attention to the same, so that the company might suffer no default

and sustain no injury"; and that "it is not essential to the satisfaction of the statute that the person served should have the entire charge or control of the corporation or of its business." In *Ruland* v. *Canfield Pub. Co.*, 10 N. Y. Supp. 913, 914, the term "managing agent" was defined to mean "a person having an independent discretionary control in a locality where his duties are performed, as was the case with the agent in *Bain* v. *Insurance Co.*" In *Brayton* v. *New York, L. E. & W. R. Co.*, 72 Hun, 602 [25 N. Y. Supp. 264], it was held that the division superintendent of a large division of a railroad, remote from the company's general office is a managing agent within the meaning of the statute. In *Taylor* v. *Granite State P. Assn.*, 136 N. Y. 343 [32 Am. St. Rep. 749, 32 N. E. 992, 993], involving a foreign, not a domestic corporation, it was said that "a managing agent must be some person invested . . . with general powers involving the exercise of judgment and discretion, as distinguished from an ordinary agent or attor-. ney, who acts in an inferior capacity and under the direction and control of superior authority, both in regard to the extent of his duty and the manner of executing it."

In *Holzer* v. *Dodge Bros.*, 233 N. Y. 216 [135 N. E. 268], the sales manager of a foreign corporation whose duties required him to go from district to district and see to .it that the district representatives were properly performing their duties, but who had not the charge of any office, and whose authority was confined exclusively to carrying out the orders of the corporation and did not include any right to make a contract of any kind, and whose recommendations were not binding on the corporation, was held not to be such a managing agent as would authorize service upon him within the state while he was therein attending an automobile exhibition. In *Beck* v. *North P. & P. Co.*, 159 App. Div. 418 [144 N. Y. Supp. 602], it was held that a New York produce broker, whose functions were confined to obtaining and transmitting to the defendant, a Maine corporation engaged in producing commodities for sale, orders for its products, but who had no discretion as to prices, all of which were fixed and communicated to him in advance of orders taken, and who had no authority to accept an order but only to transmit it to defendant's Massachusetts office, was not a managing agent upon whom

process might, in New York, be served. Summarizing various other decisions, the court said it had been held "that the words 'managing agent' do not include an assistant superintendent of a corporation who has no general supervision over its affairs, and whose duties are substantially those of a foreman (*Kramer* v. *Buffalo Union Furnace Co.,* 132 App. Div. 415 [116 N. Y. Supp. 1101]); an advertising solicitor whom defendant had stated to have 'full power to make contracts for us.' (*Fontana* v. *Post Printing & Publishing Co.,* 87 App. Div. 233 [84 N. Y. Supp. 308]); a person who collected dues for a mutual benefit association and transmitted them to the home office, outside the state. (*Moore* v. *Monumental Mut. Life Ins. Co.,* 77 App. Div. 209 [78 N. Y. Supp. 1009]; nor a person authorized to make contracts for advertisements in a newspaper published outside the state (*Vitolo* v. *Bee Pub. Co.,* 66 App. Div. 582 [73 N. Y. Supp. 273])." In *City of New York* v. *Staten I. M. Ry. Co.,* 180 N. Y. Supp. 1, the superintendent of a street railway, a subordinate of the general manager, having charge of the operation of cars, and employing motormen and conductors, but not in charge of the general business of the road was held not its "managing agent" and service upon him, therefore, insufficient. According to the court (p. 2) "a managing agent of a corporation is one who has charge and control of the company's business, with the right to exercise his judgment and discretion (citing cases). It is not essential such an agent shall be in charge of all the company's business. It is sufficient if he has entire charge of it in a certain section (citing cases). But he must have general discretionary powers of direction and control. . . . Whether an employee is a managing agent is to be determined by his powers and the acts he performs."

We have referred to these New York authorities dealing with the meaning of the expression "managing agent" with some particularity because they illustrate the trend of decision in that jurisdiction, where, perhaps, the application of the term is more frequently called in question than anywhere else. Counsel cite decisions on the point from various other quarters and the books contain a great many more. Especially does appellant ask us to consider *Osborne Co.* v. *Columbia C. F. A. Corp.,* 9 Wash. 666 [38 Pac. 161], where, under a statute authorizing service of summons on a domes-

tic corporation "by delivering a copy to the president or other head of the company or corporation, secretary, cashier or managing agent thereof," an attempt to serve an agent in charge of a branch store belonging to a corporation having a manager exercising general control of its business, including that transacted by the agent, was held ineffectual, the court saying: "the term 'managing agent' would seem to carry the idea that such an agent was one who managed the affairs of the corporation and not some particular part or branch thereof only," and that it would not include one "who was only in charge of a single branch of the business of the corporation among those upon whom service could be made." There was, however, other language in the context from which the court concluded that "when the legislature intended to provide for service upon others than those having general and uniform relations to all of the business of the company they made special provision therefor, from which it will follow that, as to corporations as to which no such special provision was made, the general language used was intended to exclude therefrom all other classes of officers and agents."

Coming to the decisions in this state, none among those cited seem to us to conclude the precise questions that we have, here, to decide. Most nearly in point is *Kennedy* v. *Hibernia S. & L. Soc.*, 38 Cal. 151, involving the service of a garnishment on a bank corporation under a statute providing for service by leaving with the person owing the debt or having in his possession or control the credits sought to be reached "or with his agent" a copy of the process. The court held that the statutory expression "agent" meant "managing agent," and that the intent of the statute was to provide for the service of garnishment process on corporations by serving the same officers on whom summons might be served, and that service on a mere seller was insufficient, saying (p. 154) "corporations usually have numerous 'agents' for the different departments of their business. An insurance company may have, besides . . . chief officers, numerous soliciting agents in various portions of the State; and, in one sense, every superintendent or conductor on a railroad is the agent of the company, and every master or clerk of a steamboat is, to a certain extent, the agent of the owner. And yet, it would scarcely be claimed that an

insurance company would be bound by a garnishment served on one of its traveling agents, or a railroad company by a service on a conductor, or a navigation company by a service on the master, clerk or mate of one of its boats. Such a practice would tend to the most perplexing results; and nothing but the most explicit language in the statute would justify us in upholding such a construction of it. We hold, therefore, that . . . if service be made on the 'agent' of a corporation, it must be on the 'managing agent.' . . . At common law, service of process on a corporation must be made on the president or principal officer." In *Pacific Coast R. Co.* v. *Superior Court,* 79 Cal. 103 [21 Pac. 609], it was, in substance, held with respect to the application of the code section here involved, that the term "manager" is synonymous with "managing agent," but there was no discussion of what is necessary to constitute one such manager.

It was decided in *Blanc* v. *Paymaster Min. Co.,* 95 Cal. 524 [29 Am. St. Rep. 149, 30 Pac. 765], that a mere clerk in a store, having some power of handling cash and paying men was not a "managing agent."

It was, however, in *Francis* v. *Independent Elec. Supply Co.,* 33 Cal. App. 482, 483 [165 Pac. 716, 717], said that "the fact that a corporation has a general manager whose supervision extends to all of its business, does not exclude its right to vest in another agent the powers of a general manager representing the corporation in the conduct of some department of its business. The superintendent or manager of such department stands in the same relation to the matters pertaining to his department as does the general superintendent or general manager to the general affairs of the company."

We do not think that the words "managing agent" appearing in section 411 of the Code of Civil Procedure, can in the case of a corporation formed under the laws of this state, any more than in the case of a corporation organized elsewhere but doing business here, be confined to its "general manager," or that they mean *the* managing agent rather than *a* managing agent (*Brayton* v. *New York, L. E. & W. R. Co.,* 72 Hun, 602 [25 N. Y. Supp. 264], *supra*). It might, with as much reason, be argued that if such corporation had, as appellant has, several vice-

presidents, service could not be made on any, because he would not be *the* vice-president; or that, if such corporation had, as appellant has, several assistant secretaries, then, service could not be made on any one of them, because no one would be *the* assistant secretary but only *an* assistant secretary. Whatever may be the situation under the Washington statute, we are not inclined to hold that to be a "managing agent" within the meaning of our statute, such agent must manage the affairs of the corporation as a whole, nor that the term necessarily excludes one in charge of a single department of the corporation's business, nor that it necessarily excludes one in charge of all of its business at a place other than that where its principal office is, nor even that it necessarily excludes every agent whose discretion is in any degree, controlled by a superior. None of these tests are conclusive. ■ We hold the true rule to be that originally laid down in New York in *Palmer* v. *Pennsylvania Co.,* *supra,* and reiterated in nearly the same language in *Barret* v. *American Tel. & Tel. Co., supra,* and again in *Brayton* v. *New York, L. E. & W. R. Co., supra,* that "every object of the service is obtained when the agent served is of sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made" and that by service on such an agent, as said in the two last-mentioned cases, "the requirement of the statute is answered." Whether in any given case the agent in question, is a "managing agent" within what we have decided the meaning of that expression to be, must depend on the particular facts involved. It is impracticable to lay down a more concrete test of general validity.

■ We think, then, that the return on the present summons on its face, indicated a valid service on the defendant (now appellant) corporation. The statutory words "managing agent" appear. The use, preceding this language, of the word "district" must be construed to signify a territorial limitation on the field of operations of the agent served. Unless, however, such limitation was so narrow as to deprive him of the character of a "managing agent" under the tests that, following the New York authorities, we have laid down, such limitation is, under the view adopted, immaterial. That the limitation went to that extent is negatived by the words "managing agent." For the

purposes of this litigation, therefore, the sheriff's use of the word "district" may be disregarded as surplusage and harmless.

We have next to decide whether, taking the record as we have it, Lorden, as an agent for appellant, can be said to have had "sufficient character and rank" to make it reasonably certain that appellant would be "apprised of the service made," in other words to constitute a "managing agent." ▇ Since, under section 4159 of the Political Code, a sheriff's return is *prima facie* evidence of the facts therein stated, it was incumbent upon appellant, if it desired to overcome the statements made to make a showing. (*Rowe* v. *Table Mountain Water Co.*, 10 Cal. 441, 444; *People* v. *Lee*, 128 Cal. 330, 332 [60 Pac. 854].) This is conceded, but appellant claims that, while the return is some evidence of what it states, yet it is the weakest kind of *prima facie* evidence, and, when the Walker affidavit appeared, was virtually without probative force. In *Donedi* v. *New York State Mut. Ins. Co.*, 2 E. D. Smith (N. Y. Common Pleas), 519, on appeal from an order denying a motion to vacate a judgment because, as was claimed, the person on whom service was made was not a "managing agent" of the defendants, the court, though not satisfied that he was such managing agent, held it incumbent upon the defendants to clearly establish the asserted defect in his powers "especially when it is obviously within their power to show what was the precise nature and extent" of his "agency for them in this city." This case is referred to in the referee's decision in *Ruland* v. *Canfield, etc.*, 10 N. Y. Supp. 913, 914, *supra*, as one which "determines the question of burden of proof, as a corporation cannot conceal itself."

▇ As to the affidavits here, so far as they present any conflict on the facts, the determination of the trial court is conclusive upon us. (*Hunter* v. *Bryant*, 98 Cal. 247, 250 [30 Pac. 51]; *Norton* v. *Atchison, T. & S. F. Ry. Co.*, 97 Cal. 388, 393 [33 Am. St. Rep. 198, 30 Pac. 585, 32 Pac. 452]; *Mott I. Works* v. *Plumbing S. Co.*, 113 Cal. 341 [45 Pac. 683]; *Doak* v. *Bruson*, 152 Cal. 17 [91 Pac. 1001]; *Flood* v. *Goldstein Co.*, 158 Cal. 247 [110 Pac. 916]; *Patterson* v. *Keeney*, 165 Cal. 465 [Ann. Cas. 1914D, 232, 132 Pac. 1043]; *Dickinson* v. *Zubiate Min. Co.*, 11 Cal. App.

656, 662 [106 Pac. 123]; *Nelson* v. *Joseph*, 78 Cal. App. 743 [248 Pac. 754].) It must be conceded that the affidavit showing was, on neither side, very circumstantial. Appellant, despite the formidable array of superior officers which it is stated to have, furnishes the trial court only with the affidavit of a minor official, an assistant secretary, whose own relation to the business of the corporation is not otherwise defined. The affidavit, as we saw, undertakes to say that Lorden is not "a managing agent or manager" of appellant corporation or of any department thereof. Taken by itself, this statement may have some probative force, but, so far as any particulars regarding his powers and duties are made to appear, it must yield to them. The framework of appellant's organization, including that of its sales department, is described, and Lorden is, in effect, characterized as a mere employee without powers or duties except in the branch of the business concerned with selling petroleum products, where, it is stated, he acts entirely at the direction and under the control of certain Los Angeles officials and is, by appellant's rules, required to submit to superior authority, specified in the affidavit, everything requiring the exercise of judgment and discretion, and to comply with the instructions given. The rules referred to are not set out, nor is any detail given about the nature or extent of the sales that are being made or whether for cash only or on credit. Moreover, all reference in the affidavit to the status, powers and duties of Lorden is in the present tense, and nothing said in terms, but only by implication, about his status, powers and duties some days before when the attempted service was made. It is true the counter-affidavits are from persons having no intimate knowledge, so far as appears, of the arrangements within appellant's organization. Lorden's own statements to the affiants that he had discretionary powers are not proof that he had them. Yet there is much in these affidavits to which the trial court had the right to give weight as evidence. It sufficiently appears that appellant has absorbed the business of the former concern for which Lorden was agent, that appellant's establishment at San Diego was, months prior to the attempted service, extensive, embracing storage tanks, warehouse and office buildings; that its operations in selling gasoline, kerosene and lubricating oils, have extended to all of San Diego

County; that, in so far as can be determined by the public, Lorden is its manager, in full charge within all that area, and that at least for some months he had been allowed by appellant to go on and make contracts for it, for the sale and delivery of its products, with what, to outward appearance, was the plenary authority which he claimed to have; besides which, in appellant's behalf, he hires and pays appellant's local employees. While what the public might have been led to believe his powers to be would not determine what they were, and the situation is hardly one in which any estoppel can arise, yet the fact that arrangements of the sort which he entered into with the public had, for a material period of time, been allowed to go on without apparent interference by higher authority, was a circumstance which, at least in the absence of a showing from appellant in some detail of what Lorden's instructions were, might reasonably have been treated by the trial court as justifying an inference that he had the powers which he assumed to have.

On the whole we cannot say that there was such an absence of a showing that his character and rank measured up to the definition of a managing agent as to justify us in disturbing the conclusion of the trial court.

The order is affirmed.

Barnard, J., concurred.

Cary, P. J., deeming himself disqualified, took no part in the decision.

A petition for a rehearing of this cause was denied by the District Court of Appeal on September 10, 1930.