**GRAVELY MOTOR PLOW & CULTIVATOR CO. v. H. V. CARTER CO., Inc.**

No. 12844.

United States Court of Appeals
Ninth Circuit.

Nov. 26, 1951.

Rehearing Denied Dec. 28, 1951.

Samuel S. Stevens, F. Whitney Tenney, Eugene S. Clifford and Heller, Ehrman, White & McAuliffe, all of San Francisco, Cal., for appellant.

David Freidenrich and Carroll, Davis & Freidenrich, all of San Francisco, Cal., for appellee.

Before DENMAN, Chief Judge, and BONE and POPE, Circuit Judges.

DENMAN, Chief Judge.

This is an appeal from a judgment awarding damages to appellee, hereafter called Carter Co., a California corporation, on a finding that the appellant, hereafter called Gravely Co., a West Virginia corporation, had broken its contract to deliver certain tractors to Carter Co.

Gravely Co. contends that no contract was entered into with Carter Co. for delivery to it of the tractors. Underlying this contention, Gravely claims that the district court lacked jurisdiction in personam over it because a service of summons on one John W. Heinen, general manager of Gravely Pacific, Inc., a corporate subsidiary of Gravely Co., was not a service on it, and that the court erred in denying its motion to quash that service.

We agree that the district court lacked such jurisdiction in personam. This is the view of the judge of the district court, who tried the case on its merits, but who held to the contrary because he felt that he was bound by the prior decision of another judge who had held the service to be a valid one on the Gravely Co.

The burden of proving a jurisdictional service within the California law is upon Carter Co. We agree with Gravely Co.'s contention that Carter Co. has not proved that Gravely Co., in the process of the sale and delivery of its tractors, was doing business in the State of California at the time of the purported service of summons relied upon.

A number of the exhibits in this case have been lost, but on the evidence we have before us, there is nothing to show that the tractors were not delivered to Pacific Co. at their place of manufacture in West Virginia with the title there passing to Pacific Co. and their transportation by rail or otherwise to California being by the agent of Pacific Co. We are not confronted with a case where Gravely Co. employed the railroad to deliver its tractors to Pacific Co. in California, transferring title in California, and hence are not required to determine the validity of a contention that such a transaction is doing business within the State of California within the meaning of California cases cited by Carter Co.

Carter's further contentions are (a) that Heinen was Gravely Co.'s agent for the service of summons and (b) that Pacific Co. is the alter ego of Gravely Co. and hence that the service on Heinen, valid as to Pacific Co., is upon Gravely Co.

(a) Gravely Co. had in California no designated agent, nor a president or other head of that corporation, nor a vice president, secretary or assistant secretary or general manager, persons named for the service of summons by § 6500 of the Corporations Code.[1]

The statute's remaining serviceable person must be one which Gravely Co. has "authorized to receive service of process". Carter Co. claims that Heinen as general

---

[1] "§ 6500. To whom process may be delivered: Evidence of appointment of agent. Process directed to any foreign corporation may be served upon the corporation by delivering a copy to the *person* designated as its agent for service of process or *authorized to receive serv-* ice of process, or to the president or other head of the corporation, a vice president, a secretary, an assistant secretary, the general manager in this State, or the cashier or assistant cashier of a bank." (Emphasis supplied.)

manager of Gravely Pacific, Inc. is a person "authorized" by Gravely Co. to receive the service. There is no evidence that such an authorization was directly given him by Gravely. Carter Co. contends that the relationship between the two corporations warranted the district court inferring such an authorization as the basis of its denial of the motion to quash.

That motion was submitted on affidavits without viva voce testimony. They show that Gravely Co. owns the majority of the stock of Gravely Pacific, Inc., hereinafter called Pacific, Inc., a West Virginia corporation, having a chief office in South Charleston, West Virginia, and its principal place of business in California. Each corporation employs separate personnel, the books of account and other records of each corporation are kept at their respective offices, and each corporation has separate auditors. Each corporation has separate capitalization, issues separate financial statements and files separate income tax returns.

Gravely Co. sells tractors to Pacific Inc., which resells and delivers them to its Pacific Inc.'s customers there. The contract in evidence between the two parties states that Pacific Inc. is not the agent of Gravely in such sales. The contract specifically provides that "the distributor [Pacific, Inc.] is an independent contractor and is not empowered in any shape or form to bind [Gravely Co.] the manufacturer."

It appears that one D. Ray Hall, the president of Pacific, Inc., was also president of Gravely Co. Hall resided in Dunbar, West Virginia and had not been in California since 1945. Though the evidence does not show it, Carter Co. contends that Hall, in all likelihood, would be advised by letter from Heinen of the latter's receipt of the summons in February, 1947. Carter Co. says further that this is a sufficient service on Gravely Co. to bring it within the statement of Thew Shovel Co. v. Superior Court, 35 Cal.App.2d 183, 191, 95 P.2d 149, 154, as follows: "Having determined that the corporation petitioner was doing business in this state at the time of the service of the summons, the only question now before us is whether or not the *party served was an official* of sufficient representative capacity to insure the corporation defendant's being duly and regularly advised of the pendency of the Hudson action in order that proper appearance could be made therein. *The party served was a vice-president* and in addition thereto presumably acquainted with the general aspects of the case; he had for a period during his stay in California for pleasure assumed the role of an official in an attempt to transact the business of adjusting a claim against the corporation of which he was an officer. The purpose of section 406a, Civil Code, is fulfilled if one [an officer] of sufficient dignity is served to reasonably assure notice to the corporation. * * An officer of a foreign corporation present in this state on official business relating to the matter upon which he is served is amenable to process." (Bracketed matter and emphasis supplied.)

█ It is apparent that the person "of sufficient dignity" referred to, is one who is an officer of the corporation to be served. Since Heinen had no official or employee relationship with Gravely Co., the fact that Heinen might tell an officer of the Gravely Co. that he, Heinen, received a summons is not transferring the service to that officer.

In Sales Affiliates, Inc., v. Superior Court, 96 Cal.App.2d 134, 214 P.2d 541, there was the service of summons on the Secretary of State provided for in § 6501 of the corporations Code for corporations doing business in California. There is nothing in the record before us showing that Gravely Co. conducted any transaction in California whatsoever, much less such transactions as in the Sales Affiliates case.

In Socony Vacuum Oil Co. v. Superior Court, 35 Cal.App.2d 92, 94 P.2d 1019, 1020, it is admitted the summons on the corporation was served on an agent of that corporation and the question decided was that the agent, "a general manager in California", occupied a position *with that corporation* of sufficient character and rank to make it reasonably certain that the corporation would be apprised of the service. The case has no application to the service on Heinen who had no position with Gravely Co. of any character or rank. Similarly, in Roehl v. Texas Co., 107 Cal.App. 691, 291 P. 255, and Milbank v. Standard Motor Const. Co.,

132 Cal.App. 67, 22 P.2d 271, where the persons served were admittedly agents of the corporations sought to be served, the decision was that each was of the rank of a "managing agent" within the meaning of the then California Civil Procedure Code, § 411, providing for service on a managing agent. • Likewise in Clover Leaf Freight Lines v. Pacific Coast Wholesalers Ass'n, 7 Cir., 166 F.2d 626, where a corporation was the agent of the out-of-state association in doing the latter's business in Illinois and was served with the summons to the association, in compliance with the Illinois law for the serving of corporations.

(b) Carter Co. makes a further contention that because a majority of Pacific, Inc.'s shares are owned by Gravely Co. and the two corporations have certain common directors, the former is the alter ego of the other and the service on Pacific, Inc. is service on the Gravely Co. It cites no California case so holding, nor any statute making the service on such a subsidiary a service on the parent corporation.

■ The United States Supreme Court has held that in the absence of such a federal or state statute such a service is invalid. The case of Cannon Manufacturing Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, involves facts almost identical with the case at bar. Therein the defendant Cudahy, a Maine corporation, established a subsidiary corporation, the Cudahy Packing Company of Alabama, to market its products within the State of North Carolina. Process as in the instant case was served upon the process agent of the subsidiary and the plaintiff undertook to establish identity between the defendant, the Maine corporation, and its subsidiary, the Alabama corporation. The facts reveal that the subsidiary bought from the defendant and sold to dealers. Goods packed by the defendant in Iowa were shipped direct to dealers and the subsidiary corporation collected the price. Through ownership of the entire capital stock and otherwise, the parent corporation dominated the Alabama corporation completely and exerted its control in substantially the same way, and through the same officers, as it did over those selling branches or departments of its business not separately incorporated which were established to market the Cudahy products in other states. The Supreme Court, commenting upon the recited facts, remarked in 267 U.S. at page 335, 45 S.Ct. at page 251: "The existence of the Alabama company as a distinct corporate entity is, however, in all respects observed. Its books are kept separate. All transactions between the two corporations are represented by appropriate entries in their respective books in the same way as if the two were wholly independent corporations."

The court then goes on to raise the question as to whether or not this corporate separation, carefully maintained, must be ignored in determining the existence of jurisdiction. Answering this question in the negative, the court said in 267 U.S. at page 336, 45 S.Ct. at page 251: "The defendant wanted to have business transactions with persons resident in North Carolina, but for reasons satisfactory to itself did not choose to enter the state in its corporate capacity. It might have conducted such business through an independent agency without subjecting itself to the jurisdiction. * * * It preferred to employ a subsidiary corporation. Congress has not provided that a corporation of one state shall be amenable to suit in the federal court for another state in which the plaintiff resides, whenever it employs a subsidiary corporation as the instrumentality for doing business therein. Compare Lumiere v. Mae Edna Wilder, 261 U.S. 174, 177, 178, 43 S.Ct. 312, 67 L.Ed. 596, 600–602. That such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction was settled by Conley v. Mathieson Alkali Works, 190 U.S. 406, 409–411, 23 S.Ct. 728, 47 L.Ed. 1113, 1115, 1116, Peterson v. Chicago, R. I. & P. R. Co., 205 U.S. 364, 27 S.Ct. 513, 51 L.Ed. 841, and People's Tobacco Co. v. American Tobacco Co., 246 U.S. 79, 87, 38 S.Ct. 233, 62 L.Ed. 587, 590, Ann.Cas.1918C, 537. In the case at bar, the identity of interest may have been more complete and the exercise of control over the subsidiary more intimate than in the three cases cited, but that fact has, in the absence of an applicable statute,

no legal significance. The corporate separation, though perhaps merely formal, was real. It was not pure fiction."

Following the Cannon decision are Echeverry v. Kellogg Switchboard & Supply Co., 2 Cir., 1949, 175 F.2d 900, Amtorg Trading Corp. v. Standard Oil Co. of Cal., D.C.S.D. N.Y., 47 F.Supp. 466, and Favell-Utley Realty Co. v. Harbor Plywood Corp., D.C. N.D.Cal., 94 F.Supp. 96. We find no merit in Carter Co.'s alter ego contention.

Since the District Court has no jurisdiction in personam over Gravely Co., the judgment is reversed and the District Court ordered to enter an order quashing the service of summons on that corporation.