John GARABEDIAN, Bertha Garabedian and Richard Peters, Appellants,

v.

GRIFFIN STEEL & SUPPLY CO. and Allen C. Wait, Trustee in Bankruptcy, et al., Appellees.

No. 19189.

United States Court of Appeals
Ninth Circuit.

Jan. 7, 1965.

L. Kenneth Say, Fresno, Cal., for appellants.

Hyde & Olson, Fresno, Cal., for appellee, Griffin Steel & Supply Co.

Before CHAMBERS, HAMLIN and ELY, Circuit Judges.

CHAMBERS, Circuit Judge.

Clyde Inman suffered a fire loss on April 12, 1961. The amount of the loss was $12,000. Inman can get none of this because of his subsequent bankruptcy.

The question here is the priority of creditors who levied or attempted to levy more than four months prior to bankruptcy. The referee, affirmed on review by the district court, has held the money goes first for certain fees and costs, then to the United States for some taxes [1] and the balance to Griffin Steel & Supply Co. This balance will only partially satisfy the claim of Griffin against Inman. Apparently the Garabedians and Peters will end up as general creditors.

The controversy arises out of the service of attachments in the California collection suits. It is conceded that Griffin's service, subsequent to that of the Garabedians and Peters, was good. The validity of the service of the writs in the suits obtained by the latter two has not been determined by the California state courts, so we have the question.

At a time when it is agreed the Niagara Fire Insurance Company owed Inman the $12,000 here at issue, the Garabedians and Peters ran their California attachments against "American Fore Loyalty Group" and the sheriff's returns show service upon "Charles Ryan, manager of American Fore Loyalty Group," not Niagara. Thus, we come to who is American Fore Loyalty Group and who is Charles Ryan, the California statute on levies on debts and credits requiring service on a high executive officer or "managing agent" of a corporation.[2]

Niagara is one of several associated companies who together call themselves the America Fore Loyalty Group. (Apparently only three of ten domestic companies in the group, including Niagara, are qualified to do business in California.

We attach no importance to the variance of "American Fore" and America Fore.") America Fore was described by the assistant treasurer of Niagara on deposition as a trade name. Whatever it be, it is not incorporated.

The only testimony on Ryan, described on the sheriff's writ returns as "manager," comes from the same assistant treasurer of Niagara. He said of Ryan: "He is a special agent operating out of Fresno, California. He is answerable to the vice president and manager, Pacific department. He's a special agent representing the three * * * companies Continental, Niagara, Fidelity Phoenix, and travels in the San Joaquin territory, calling on agents, soliciting fire insurance business for the three companies he represents." Further, he said Ryan was not an officer or manager and had no other duties except to contact agents and solicit business. The referee found that America Fore Loyalty Group was not Niagara. This may be so. We do not decide. But we pass to his finding, affirmed on review, that Ryan was not a managing agent. Both sides think Roehl v. Texas Co., 107 Cal.App. 691, 291 P. 255 is in their favor. Appellee Griffin also relies on Kennedy v. Hibernia Savings and Loan, 38 Cal. 151.

In our analysis, no intendments in favor of the regularity of the service can be taken when Ryan is described as "manager" and not "managing agent," the statutory language. Further, we do not think the title of "special agent" cuts either way. A special agent might have such duties as would make him, under the statute, a managing agent. We believe managing agent implies some real authority of decision, something broader than just soliciting. Perchance, if Ryan had testified or if the assistant treasurer could have been induced to be a little more expansive, Ryan might have been shown to be in a little larger orbit than the record discloses. But on our record, we cannot say the

1. A federal tax claim ripening after Griffin had obtained a judgment and had served process will go unsatisfied.

2. California Code of Civil Procedure § 542.

referee and the district court were clearly erroneous in finding that Ryan was not a "managing agent."

We think the Hibernia case shows authority in the bank teller there comparable to that here ascribed to Ryan, the special agent. Yet in Hibernia the service was held no good.

In Roehl v. Texas Co., supra, it is said that the agent should be one of "sufficient character and rank to make it reasonably certain that the defendant will be apprised of the service made." However, we think the test must be an objective one based upon the agent's real authority in each case. We are confident that the California court in Roehl did not mean to say that service would be good on a menial, even though he was actually invariably reliable in fact. And, we do not believe it meant to include ordinary salesmen in its dictum. Ryan may have been more, but the record does not disclose it.

Below, at the solicitation of the trustee, the referee issued to the known claimants to the proceeds of the fire loss, an order to show cause as to what their interests were. The Garabedians, Peters, Griffin, Niagara and the United States, among others, responded. Only the United States asserted that the case had no place in the referee's court. The others seemed pleased to have the matter handled under summary proceedings by the referee. The United States was subordinated only to the bankruptcy overhead charges, fees and expenses of the trustee and his attorney, and fees in a state interpleader suit filed by Niagara. Presumably the United States will be paid in full on its first in time liens. Thus, it has not appealed.

■ At least as a matter of judicial administration the United States took the correct position. The trustee had nothing to offer the parties that would held them. On its face the Griffin lien was a good one and far exceeded the fire loss. The only questions were whether other parties were ahead of Griffin. No general creditor stood a chance to get a nickel out of the fire loss fund. Questions on validity of service peculiar to California state law were involved. The case should have been left in the superior court at Fresno under Niagara's interpleader. The very weakness of the proceeding is shown when the referee completed his work in the case he apparently did not have the clerk of the Fresno superior court before him. Thus, all he could do was to order Niagara to go over and request the clerk of the state court to let him have the money to turn over to the bankruptcy trustee.

■ Peters, Garabedians and Niagara having submitted to the summary jurisdiction of the court, we think they are bound by the determination and so are all nonappealing parties. Here we find no claim made at the trial before the referee by Peters or Garabedians that Griffin could not assert any irregularity in the service of the writs that could be asserted by Niagara. Implicit in the trial as held is apparent acquiescence in the proposition that Griffin could assert any insufficiency in service.[3] On this point, we do not know and do not guess how a California court would rule. But we think the point requires us to state a caveat. As it was, Peters and Garabedians, having acquiesced in the issues as framed, expressly or by implication, we think it too late for them to raise such a point (they have not) and that it would be improper for us to reach out and get it.[4]

The district court's order is affirmed.

3. See Union Pacific R. Co. v. Johnson, 9 Cir., 249 F.2d 674.

4. It is possible Niagara in the state interpleader suit reported the questionable service of the Peters and the Garabedian writs. Or they may have asserted it in their responses to the referee's order to show cause. But the record here does not disclose such objections by Niagara.