ALVIN KRON, APPELLEE, V. J. C. ROBINSON SEED COMPANY, APPELLANT.

FILED NOVEMBER 16, 1923. No. 22535.

1. Corporations: SERVICE OF SUMMONS: "MANAGING AGENT." "An agent of a domestic corporation, whose principal place of business is in another county in this state, whose contract of employment demands of him the exercise of judgment and discretion in the business affairs of his principal, and who has charge of the property and business of his principal in the locality where he is stationed, is 'a managing agent,' upon whom

service of summons may be made." *Brophy v. Fairmont Creamery Co.*, 98 Neb. 307.

2. ' Sales: SEED CORN: TESTING. Where a contract betwee.ı K., a farmer, and R., a wholesale seed company, for the growing of seed corn by K. for R., provides, as a condition of the acceptance of the corn by R., that it shall possess stipulated germinating qualities, but no time or place is fixed in the contract for testing the germinating qualities, it may be tested before delivery by fair, average samples furnished by K. to R. for that purpose.

3. ———: ———: ACCEPTANCE: QUESTION FOR JURY. When a contract between K., a farmer, and R., a wholesale seed dealer, for the growing by K. for R. of seed corn, provides, as a condition to the acceptance thereof by R., that it shall possess certain germinating qualities, and shortly previous to the time for delivery K. furnishes to R. samples of the corn, to be tested for germinating qualities, which are tested and found satisfactory by R., and the corn is thereafter delivered to and received by R., and the corn does not possess germinating qualities equal to the samples, nor to the contract requirement, such delivery and receipt will not constitute an acceptance of the corn so as to require R. to pay the contract price therefor. Under such circumstances, whether the corn delivered was equal in germinating qualities to the samples, or at least equal to the contract requirement, was a question of fact to be determined by the jury.

4. Appeal: FAILURE TO INSTRUCT AS TO DEFENSE. Failure of the trial court to submit to the jury by appropriate instruction a defense, properly pleaded and supported by competent evidence, is prejudicial error.

APPEAL from the district court for Valley county: EDWIN P. CLEMENTS, JUDGE. *Reversed.*

*Brown, Baxter & Van Dusen* and *Davis & Davis,* for appellant.

*Munn & Norman, contra.*

Heard before MORRISSEY, C. J., ROSE, DEAN and GOOD, JJ., REDICK, District Judge.

GOOD, J.

This is an action to recover the contract price for seed corn, grown by plaintiff for defendant and delivered to it,

Kron v. Robinson Seed Co.

pursuant to the terms of a written contract. The defense to the merits of the action is that the seed corn delivered did not measure up to the requirements of the contract, in that it was not in a merchantable condition, was not bright and well cured, and did not possess the stipulated germinating qualities, and that samples of the corn, sent by plaintiff to defendant prior to delivery for testing, were not fair, average samples of the corn, but that, to procure acceptance of the corn by defendant, plaintiff submitted a sample from the very best of such corn. The trial resulted in a verdict for plaintiff for the full amount claimed, and defendant has appealed.

Defendant also objected to the jurisdiction of the court, and the first assignment of error to be considered relates to that question. Defendant is a corporation, engaged in the wholesale seed business, with its principal place of business located at Waterloo, Nebraska. A part of its business is the growing of sweet and field corn for seed purposes. It makes contracts with farmers to grow certain kinds of corn, to be delivered to it either at Waterloo or at other points. For many years the defendant has been entering into contracts with numerous farmers in Valley county, Nebraska, to grow seed corn for its business. It kept and maintained a warehouse and an office at North Loup, Nebraska. In charge thereof was one Earnest. Service of summons upon the corporation was obtained by delivery of summons to Earnest in Valley county. Defendant contends that it did not maintain an office and place of business in North Loup, and that Earnest was not a managing agent, and that therefore the court obtained no jurisdiction over it by service upon Earnest. This question was presented to the court upon affidavits, and objection to jurisdiction overruled, and defendant has preserved the objection in its answer to the merits of the case.

From the record it appears that Earnest had been in the employ of the defendant for a period of 16 years. Among the duties that he had to perform, and did perform, for the defendant was to make, in the name of defendant, con-

tracts with the farmers in the vicinity for the growing of the corn. In these contracts he agreed with the parties as to the price to be paid for the corn; agreed upon a fixed time of delivery; delivered to the farmers the proper amount of seed to be planted upon the number of acres agreed upon; when the time came for harvesting, he delivered to the farmers the sacks in which the corn was to be placed before delivery; he received and weighed the corn at North Loup and shipped it to the defendant at Waterloo; he made records of the weights; reported the weights; drew upon the defendant for the amount due to the farmers upon their contracts; examined the corn and passed upon it, to a certain extent, when it was delivered; made reports upon blanks furnished by the defendant as its agent; and defendant, in letters to some of the farmers in the vicinity, advised them as to the care of the corn, and that if they were in doubt to confer with its agent, Mr. Earnest, at North Loup.

Many other facts and circumstances are disclosed by the record, indicating that Earnest was required to exercise his own judgment and discretion in the performance of his duties pertaining to the business of the defendant in Valley county. The rule of law applicable is well stated in *Brophy v. Fairmont Creamery Co.*, 98 Neb. 307, wherein it is held: "An agent of a domestic corporation, whose principal place of business is in another county in this state, whose contract of employment demands of him the exercise of judgment and discretion in the business affairs of his principal, and who has charge of the property and business of his principal in the locality where he is stationed, is 'a managing agent,' upon whom service of summons may be made." The facts in this case unmistakably show that Earnest was the managing agent upon whom service of summons could be properly made.

The contract which gives rise to this controversy was entered into by the parties to this action in January, 1920. Among other things, it provided that defendant should furnish seed corn to plant 15 acres of Early Minnesota

sweet and 25 acres of Sanford Flint corn; that plaintiff should prepare the ground, plant the corn in season, cultivate the crop, harvest the same in season, and deliver the entire merchantable crop raised on or before January 1, 1921. The contract required the corn, when delivered, to be in a bright, well cured, merchantable condition; the corn to be well sorted at the sheller and to have a germinating quality which would test 85 per cent. for sweet corn and 90 per cent. for field corn. It further provided: "When field corns are delivered the market elevator price at the point of delivery shall be due and the balance be due as soon as a proper test for germination has been made. * * * Provided, that in case said vine seeds or corn are not in a merchantable condition, as above provided, at the time of delivery, first party (defendant) may, at his option, reject any part or all of such seeds or corn." There were no other provisions in the contract as to when the corn should be tested for germinating qualities. The contract further provided that plaintiff should receive $4.25 a hundred pounds for the sweet corn and $1.75 a bushel for the Sanford Flint corn. It was agreed that plaintiff delivered 38,300 pounds of Early Minnesota sweet corn and 1,031.73 bushels of Sanford Flint corn.

In November, 1920, the defendant wrote to plaintiff, stating that the previous year it had sustained a heavy loss because much of the corn grown in the vicinity of Ord was not delivered in a merchantable condition, requesting the plaintiff to observe the conditions of his contract as to caring for the corn, and ending the letter in the following language: "Mr. J. F. Earnest, who is acting as our agent at North Loup, will be very glad to cooperate with you in every possible way, and in cases where there is the least doubt as to the quality, suggest that you get in communication with him, and together select a representative sample from the crib-run, sending same to us for germination test." About the 1st of December plaintiff went to see defendant's agent, Earnest, at North Loup and asked for bags in which to deliver the corn. Earnest asked

for samples of the corn to be sent to the defendant and furnished plaintiff with small bags and receptacles for samples of the corn. Plaintiff procured and delivered samples of both varieties of the corn to Earnest, who forwarded them to defendant at Waterloo. Defendant tested the samples and found them satisfactory, and so reported to plaintiff. Several times thereafter plaintiff asked Earnest for sacks in which to deliver the corn, but they were not furnished until some time in March, 1921. Defendant claims that it was unable to obtain the sacks at an earlier date.. Within a few days after receiving the sacks plaintiff shelled and delivered the corn to defendant at North Loup.

There is a conflict in the evidence as to the condition of the corn when delivered. Evidence on behalf of plaintiff is to the effect that the corn was bright, dry and in a good, merchantable condition, and, on behalf of the defendant, that the corn was damp, not of good color, some of it dirty and some rotten or moldy. Evidence for both parties shows that there was ice on the outside of some of the sacks, due to sleet or rain which had fallen after the corn was sacked, and which adhered to the outside of the sacks. Plaintiff was docked 300 pounds on his corn on account of this ice. Defendant's agent caused the samples of the corn to be tested for moisture content. He claims that, for this purpose, he took samples from six or eight bags, and that some of the bags were from those that were wet and some were from others, and that the samples tested showed 22 per cent. of moisture. There is some evidence that corn should not be shipped that possesses more than 16 per cent. of moisture content. The evidence on behalf of plaintiff was to the effect that Earnest admitted that he had selected the corn for the moisture test from the wet or damp sacks. The corn was shipped to the defendant and received by it at Waterloo about March 20. On the 22d of March defendant wrote to plaintiff: "In reference to your crop of Sanford Flint corn, sample of which has just reached the writer's desk this morning, beg to state that this does not look to be suitable for seed purposes in any respect what-

ever. Its appearance alone would condemn it as seed corn, and we don't believe it will grow over 65 or 70 per cent. if the grains are taken just as they run. We are not able to use the corn for seed purposes." And again, on April 16, 1921, the defendant wrote to plaintiff: "We have already written you about the Sanford corn you sent in here, and we are inclosing herewith papers showing the weights on this corn and also on your sweet corn. This sweet corn we have just had to run over our mills to keep it from molding, it is awfully wet and utterly useless for seed purposes, and we don't know what to do with it. It could be dried so as to save it if we had our drier in shape. * * * Your Sanford will not keep a great while. We have written you in reference to this." Some time after the middle of April, defendant made germination tests of both varieties of the corn, and the testimony as to these tests is to the effect that the corn was far below the contract requirement in germinating qualities.

Defendant now contends that the testing of the samples of the corn made in December was simply a preliminary test and was not to be determinative of the germinating qualities of the corn; that the contract contemplated that the corn should be tested for germination purposes after it had been shipped to defendant at Waterloo. Defendant charges in its answer that plaintiff did not select and furnish defendant with a fair, average sample of the corn so grown, but that, for the purpose of deceiving defendant and in an effort to obtain acceptance by defendant of the seed corn so grown, he selected samples of only the very best of such corn, which he polished and prepared, to the end that it conform to the terms of the contract as being in merchantable condition for seed purposes; and also that the final acceptance or rejection of the seed corn, according to the terms of the contract, and in accordance with the general custom of the seed business, known to and relied upon by the parties, was dependent on an inspection of such seed corn, as to its condition and the results obtained by germination tests thereof at Waterloo,

Kron v. Robinson Seed Co.

Nebraska, within a reasonable time after its arrival at said place.

A careful examination of the contract does not disclose whether the tests for germination purposes were to be made at Waterloo or elsewhere; nor does it fix a time when they should be made; nor does the contract mention any preliminary test, nor what the occasion was for any preliminary test. If the corn was not to be tested until after it had been received at Waterloo, we are unable to perceive any occcasion for the tests that were made in December previous to its shipment. It could serve no purpose; it would fulfill no terms or conditions of the contract.

We are of the opinion that, in the absence of any specified time or place for the test to be made, it was competent for the parties to have the test made prior to the delivery of the corn at North Loup, and that when the defendant requested samples of the corn for testing purposes, if fair, average samples were furnished and found to be satisfactory, and if the corn delivered was in accordance with the samples, then the contract was complied with, and plaintiff would be entitled to the contract price. However, if plaintiff did not furnish fair, average samples of the corn, and it subsequently developed that the corn delivered did not possess the germinating qualities equal to those disclosed by the samples, or at least equal to the contract requirements, then defendant would not be bound to accept the corn at the contract price. This question was raised by the pleadings, and defendant offered evidence which tended strongly to support its contention that the corn delivered was not in accordance with the samples which had been previously furnished. Whether or not the corn delivered was equal in germinating qualities to the samples, or at least equal to the requirements of the contract, was a question of fact for the jury which should have been submitted to them by proper instruction. Although an instruction along these lines was requested by defendant, none was submitted by the court, but instead thereof the court, by its ninth instruction, directed the jury that, if

Kron v. Robinson Seed Co.

plaintiff delivered the corn in question at defendant's warehouse in North Loup and defendant received such corn without objection and thereafter shipped the same to Waterloo, Nebraska, such conduct on the part of the defendant would constitute an acceptance of the corn under the contract, and it could not rightfully thereafter refuse to pay for the corn on the ground that it did not possess the qualities provided by the contract.

It is apparent that the germinating qualities of the corn cannot, ordinarily, be determined by its appearance, or by a casual inspection. When defendant received the corn at North Loup, it had a right to assume that the germinating quality of the corn would be equal to that of the sample previously furnished defendant, or at least that the corn would comply with the requirements of the contract in that respect. If, in fact, the corn delivered was not equal in germinating qualities to the sample and was not equal in quality to the contract requirements, and defendant was deceived and induced to receive the corn by reason of the furnishing of a sample which was not a fair, average sample of the corn, then the receipt of the corn would not constitute an acceptance on the part of the defendant, and would not preclude it from insisting that the corn should meet the requirements of the contract. Under the circumstances, the giving of the instruction was erroneous, and it was likewise error to refuse to instruct the jury that the receipt of the corn at North Loup would not be binding and constitute an acceptance on the part of the defendant, unless the sample previously furnished had been a fair, average sample of the corn.

The failure to give the requested instruction and the giving of the ninth instruction were both prejudicial to the defendant, and for these errors the judgment of the district court must be, and is, reversed, and the cause remanded for further proceedings.

REVERSED.