E. E. ERDMAN, APPELLANT, V. NATIONAL INDEMNITY COMPANY, A CORPORATION, APPELLEE.

141 N. W. 2d 753

Filed April 8, 1966. No. 36212.

134

Haney, Walsh & Wall, for appellant.

Gross, Welch, Vinardi, Kauffman & Schatz, for appellee.

Heard before CARTER, SPENCER, BOSLAUGH, BROWER, SMITH, and McCOWN, JJ., and KUNS, District Judge.

SPENCER, J.

This is an appeal from the dismissal of the action after the overruling of a motion to reconsider an order sustaining a special appearance. This motion was filed after we dismissed a previous attempt to appeal from the sustaining of a special appearance for lack of an appealable order. See Erdman v. National Indemnity Co., 178 Neb. 312, 133 N. W. 2d 472.

E. E. Erdman, hereinafter referred to as plaintiff, filed this action against National Indemnity Company, hereinafter designated as defendant, on April 1, 1963, and on the same day a summons was issued and delivered to the sheriff of Douglas County for service. Purported service was made by J. D. Marino, deputy sheriff, who will hereinafter be referred to as Marino. Marino's return, so far as material herein, is as follows: "Received this writ on the 1st day of April 1963 and served the same on the 2nd day of April 1963 on the within named NATIONAL INDEMNITY COMPANY, A CORPORATION: by delivering to Dale Burns, Managing Agent, personally in Douglas County, Nebraska, a true and duly certified copy of this writ with all the endorsements thereon.

"He being in charge at the usual place of doing business of such named company in said county, and, No President, Mayor, Chairman of the Board of Directors or Trustees or other Chief Officer of said Corporation being found in Douglas County, State of Nebraska."

Defendant thereafter appeared specially for the sole purpose of objecting to the jurisdiction of the court for the reason that no proper and sufficient service of process had been made upon it. This special appearance was supported by the affidavits of Marguerite White, defendant's receptionist and switchboard operator; Dale Burns, upon whom the purported service was made; and Jack D. Ringwalt, defendant's president. We will hereinafter refer to them by their family names.

We summarize these affidavits as follows: White deposed that her desk and switchboard are immediately inside the main entrance of the defendant's place of business. On the morning of April 2, 1963, Marino came to her desk and stated, "I have a summons.'" White called Burns on the telephone and told him, " 'There is a gentleman here who has a summons.'" White then directed Marino up the steps. When Marino came to her desk, he did not ask for the president, mayor, chair-

man of the board of directors or trustees, or any person in particular. She further stated that the president, vice president, treasurer, and secretary of the company were in Douglas County at the time the deputy came in.

Burns deposed that he had been employed by defendant for 16 years; that on April 2, 1963, he was director of personnel; that his duties consisted of interviewing, screening, and hiring employees; that he supervised the bookkeeping; and that he was not now and never has been an officer of the company. He stated that he was called by White who stated that there was a gentleman at the desk who had a summons. He told White to send him up and he would meet him, and he met Marino on the stairs. Marino told him that he had a summons, and handed the summons to affiant. Marino did not ask affiant if he was an officer or managing agent of the defendant, nor did he ask affiant what his capacity was.

Ringwalt deposed that on April 2, 1963, he was the president of the defendant, which is a Nebraska corporation with its principal place of business at 3024 Harney Street, Omaha, Douglas County, Nebraska. Affiant stated that he spent all of that day, with the exception of time out for lunch, at the offices of defendant, and no one served or attempted to serve him any summons in the above action. Affiant further stated that in addition to himself, the other officers of the corporation were a vice president, treasurer, and secretary, and that these three officers were at the place of business of the defendant all of April 2, 1963, except that the vice president and the treasurer were absent during the lunch hour.

At a hearing on the special appearance, the plaintiff objected to the reception into evidence of the defendant's affidavits for the reason that they constituted hearsay; were not the best evidence and were incompetent; and for the further reason that they deprived the plaintiff of the right of cross-examination. These objections were overruled, and the affidavits were received in evi-

dence. Plaintiff then had Marino sworn as a witness for the plaintiff. After he had stated his name and employment, an objection was made to the reception of oral evidence, which objection was sustained. After an offer of proof, plaintiff was given leave to file Marino's affidavit, which we summarize as follows: Marino deposed that as a deputy sheriff he received the summons in question and went to the office of the corporation at 3024 Harney Street, Omaha, Nebraska. He presented himself to a female secretary; told her that he was from the sheriff's office and had a summons for service upon the defendant; and requested the secretary to direct him to the highest officer of the company present. After completing a telephone call, the secretary advised affiant that a Mr. Burns would see him, and that Mr. Burns would come down a flight of stairs, which said secretary pointed out to affiant. He met a gentleman midway up the stairs, advised him that he was from the sheriff's office, and advised him that he had a summons pertaining to a suit instituted by E. E. Erdman. He deposed that at this time he told this gentleman he was serving him as the highest officer present of the corporation, handed him the summons, and asked him his full name and position with the defendant company. This gentleman advised him that his name was Dale Burns and he was the manager of the defendant. Marino further deposed: "That at no time did the man who identified himself as Dale Burns advise your affiant that there was any higher officer of the corporation present at the premises or that he, the said Dale Burns, was not the highest officer present at that time."

Plaintiff's assignments of error are as follows: "I. That the trial Court erred in sustaining the defendant's Special Appearance and dismissing the plaintiff's petition. II. That the trial Court erred in receiving the defendant's Exhibits A, B & C. III. That the trial Court erred in precluding plaintiff from producing direct evidence to

impeach the evidence adduced by the defendant in the form of affidavits."

Assignment of error No. II is premised on plaintiff's argument that an affidavit is an improper method of procedure because affidavits contain conclusions rather than statements of fact and deprive a party of the right of cross-examination of the deponent. The difficulty with plaintiff's premise is that our statute, section 25-1244, R. R. S. 1943, provides: "An affidavit may be used to verify a pleading, to prove the service of a summons, notice or other process, in an action, to obtain a provisional remedy, an examination of a witness, a stay of proceedings, or upon a motion, and in any other case permitted by law."

This court has on several occasions interpreted this statute to mean that an affidavit may be used to impeach an officer's return on the service of a summons. See Johnson v. Carpenter, 77 Neb. 49, 108 N. W. 161.

Assignment of error No. III is directed to the fact that the trial court refused to permit the plaintiff to produce oral evidence at the hearing on the special appearance. There was no error in this respect. The taking of oral testimony is discretionary with the trial court. In Hamer v. McKinley-Lanning Loan & Trust Co., 52 Neb. 705, 72 N. W. 1041, this court said: "It is within the discretion of the district court to take testimony orally for the determination of issues of fact arising upon motions, and not a right of either party to compel the adduction of such testimony." This has been the rule in this jurisdiction since at least 1897.

It is essential to the integrity and permanency of judicial records that the return of an officer, which is a part of the judicial record in a case, be impeached only by clear and convincing evidence. Westman v. Carlson, 86 Neb. 847, 126 N. W. 515.

Marino's return on its face appears to be regular. Defendant's affidavits clearly impeach the return. Marino's affidavit, while in conflict with the affidavits of White

and Burns, does lend some credence to them. Marino states that he asked for the highest officer present. This is directly denied by both White and Burns. Marino states that Burns told him he was the manager of the defendant. This is directly denied by Burns. It is evident from Marino's affidavit that he did not attempt to serve its chief executive officer in the first instance. His own affidavit states that he asked for the highest officer present. It is noteworthy that he states Burns did not tell him that he was not the highest officer present. Who has the burden of attempting to make proper service?

The statute does prescribe the manner of service of process on corporations by explicit provisions. Section 25-511, R. R. S. 1943, is as follows: "A summons against a corporation may be served upon the president, mayor, chairman of the board of directors or trustees, or other chief officer; or, if its chief officer is not found in the county, upon its cashier, treasurer, secretary, clerk, or managing agent; or, if none of the aforesaid officers can be found, by a copy left at the office or last usual place of business of such corporation. When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent."

These provisions are mandatory, and must be strictly pursued. See Nelson v. Robinson, 154 Neb. 64, 46 N. W. 2d 892, in which we held: "Statutes prescribing the manner of service of summons are mandatory and must be strictly pursued." Marino's return would indicate that the statute was complied with. His affidavit, read in conjunction with the defendant's affidavits, would indicate otherwise.

The statute sets out in sequence those upon whom service is to be made. If none of them is available, there is then a provision for the leaving of a copy. The first two classifications provide for personal service, the third one for the equivalent of residential service on an individual. From a mere reading of the statute, the con-

clusion is inescapable that in the first instance service is to be made upon the chief officer of the corporation. This is the only meaning that can be read into the words *or if its chief officer is not found.* We construe the statute to mean that it is incumbent upon the officer making service to exercise diligence in seeking to make that service in accordance with the priority listed. To hold otherwise would give no meaning to the plain wording of the statute. We do not interpret the statute to mean that a search must be conducted to serve the chief officer, but we do interpret it to mean that service should be had on the chief officer of a corporation if he is available. If the chief officer is not available for service, then service may be had upon one of those in the next classification. If none of those in the second classification are available so that personal service can be made, then and only then a copy of the summons may be left at the place of business of the corporation.

The intent of the statute is clear that wherever possible service be first attempted on the most responsible officer of the corporation. Plaintiff concedes the purpose of the statute is to insure that the summons be placed in responsible hands. He argues, however, that here there is no claim that Burns was not at least a responsible clerk, and that the defendant had due notice of the action. This is true, and in this instance possibly no harm would be done by aborting the plain language of the statute. To do so, however, would require us to overrule those cases which hold that strict compliance with the statute is mandatory.

We determine the showing herein to be sufficient to sustain the trial court's finding that the deputy sheriff did not follow the provisions of section 25-511, R. R. S. 1943, in making service on the defendant. The special appearance was properly sustained, and the judgment dismissing plaintiff's petition is affirmed.

AFFIRMED.

McCowN, J., dissenting.

I respectfully dissent. Restatement, Conflict of Laws, § 75, p. 111, reads: "A state cannot exercise through its courts judicial jurisdiction over a person, although he is subject to the jurisdiction of the state, unless a method of notification is employed which is reasonably calculated to give him knowledge of the attempted exercise of jurisdiction and an opportunity to be heard."

A court, by proper service of process, acquires jurisdiction over a domestic corporation. It is equally clear that in the field of conflict of laws and judgments, the validity of service of process depends upon whether the method of service prescribed is reasonably calculated to give notice of the action to the corporation and an opportunity to be heard. See, Restatement, Judgments, comment b, § 27, p. 119; Restatement, Conflict of Laws, comment b, § 87, pp. 135, 136.

At common law, jurisdiction of a court of a state over a domestic corporation is acquired by service of process upon its principal officer. The effect of local statutes extending the method of service are, of course, determined under the above rules, as to whether they are reasonably calculated to give the corporation knowledge of the action and an opportunity to be heard.

The particular statute of Nebraska, section 25-511, R. R. S. 1943, provides: "A summons against a corporation may be served upon the president, mayor, chairman of the board of directors or trustees, or other chief officer; or, if its chief officer *is not found* in the county, upon its cashier, treasurer, secretary, clerk, or managing agent; or, if none of the aforesaid officers *can be found,* by a copy left at the office or last usual place of business of such corporation. When the defendant is a foreign corporation, having a managing agent in this state, the service may be upon such agent." (Emphasis supplied.)

The issue specifically involved here has not been passed upon in this state. It is important to note, first, that the section obviously was intended to cover serv-

ice on a municipal corporation as well as a business corporation. The word "mayor," for example, occurs in the list of titles described under the first portion of the statute which refers to the "chief officer." We think it also apparent that the word "clerk," appearing in the list of officers or agents who may be served if the chief officer is not found, was intended to refer to the clerk of a municipal corporation, and not simply any clerk of a business corporation. The word "cashier" in the same section obviously was intended to refer to banking corporations. This particular portion of the statute obviously was not intended to be limited to officers or agents with the specific titles designated because it concludes with the words "or managing agent." If this section were limited to the titles mentioned insofar as officers were concerned, it would omit all vice presidents, or executive vice presidents, or comptrollers, and we see no compelling reason to give it such limiting construction. For those reasons, however, the term "managing agent" may require some additional construction.

As early as 1915, this court held that a local poultry, egg, and cream buyer, whose conduct of the local business required judgment and discretion, was a managing agent of a domestic corporation. Brophy v. Fairmont Creamery Co., 98 Neb. 307, 152 N. W. 557, L. R. A. 1918A 367. See, also, Kron v. Robinson Seed Co., 111 Neb. 147, 195 N. W. 939. We believe the proper construction of section 25-511, R. R. S. 1943, should be that a managing agent upon whom service of summons may be made is an agent who has charge of the business activities of the corporation, or of some branch, department, or division thereof, and who, in respect to matters entrusted to him, is vested with powers requiring the exercise of independent judgment and discretion, and, under the circumstances here, is of sufficient rank to make it reasonably certain the defendant will be apprised of the service of summons. See, Dillon v. Gunderson, 235

Minn. 208, 50 N. W. 2d 275; Roehl v. Texas Company, 107 Cal. App. 691, 291 P. 255.

Mr. Dale Burns was director of personnel, and also supervisor of all bookkeeping activities of the accounting department. For purposes of service of summons, under the language of our statute, we believe he had sufficient rank to make it reasonably certain that the defendant would be apprised of the service. The language of the statute does not confine the term "managing agent" to *the* general manager, nor to *the* managing agent rather than *a* managing agent. The persons designated for service if the "chief officer is not found" are all coequal, and the statute does not require service to be attempted consecutively on each applicable title designated. Service may be made upon any person coming within the class of officers or agents designated if the chief officer is not found.

There is no question here but that the deputy sheriff attempted to serve a summons upon the corporation by going to its home office and advising the switchboard operator that he had a summons to serve. There is dispute in the affidavits as to whether he asked for the highest officer present. The return of the summons made by the deputy sheriff specifically showed the summons was delivered to "Dale Burns, Managing Agent" personally in Douglas County, Nebraska. It was also stated: "No President, Mayor, Chairman of the Board of Directors or Trustees or other Chief Officer of said Corporation being found in Douglas County, State of Nebraska." The defendant does not deny that the chief officer was not found, but contends that he could have been found if the deputy had inquired for him. The statute itself provides that if the president or chief officer "*is* not found," the service may be made on the next category of officers or agents, but if none of them "*can* be found," the service shall be made by leaving a copy at the office or usual place of business. If we permit the impeachment of a return of personal service of summons

merely because of affidavits indicating a lack of diligent inquiry for the chief officer before serving another officer or agent specifically authorized by statute to receive it, then a case by case determination of what is a reasonable or diligent inquiry or search must be undertaken. This case does not involve a situation in which personal service is omitted and a copy left at the office or last usual place of business.

We think it also important to note that the fault in service was the fault of the deputy sheriff. Even if an attorney had examined the return immediately upon filing, it appeared on its face to be sufficient. In modern practice in a metropolitan center, it would be almost a practical impossibility for an attorney to assume responsibility for the individual specific instruction of deputies as to service of process in each case involvng a corporation. In other connotations dealing with jurisdictional requirements previously held mandatory, we have held that where the fault lies with the court officer, substantial compliance with an otherwise mandatory statute will be sufficient. See Liljehorn v. Fyfe, 178 Neb. 532, 134 N. W. 2d 230. It seems only reasonable to apply the same principle in this case. The better rule would seem to be that where personal service was actually made upon an officer or agent of a domestic corporation within the class of those authorized by statute to receive service of summons, it will be deemed sufficient compliance with the statutes prescribing the manner of service of summons where it appears that the chief officer of the corporation was not found, even though a more diligent attempt to comply with the statute would probably have resulted in serving the chief officer.

Statutory enactments governing service of process against corporations were intended to be liberalizations and extensions of the common law rule which restricted service of process to the principal officer. Under these circumstances, technical form should not take precedence

over the basic and fundamental requirement that personal service of process on a domestic corporation should be one reasonably calculated to give the corporation knowledge of the action and an opportunity to be heard.