JOHN R. DOYLE ET AL. V.
UNION INSURANCE COMPANY, A CORPORATION, ET AL.;
FIRST NATIONAL BANK & TRUST COMPANY OF LINCOLN,
A CORPORATION, APPELLEE, V.
WILLKIE, FARR & GALLAGHER, APPELLANT.

308 N.W.2d 322

Filed July 10, 1981.   No. 43197.

Robert C. Guenzel and Steven G. Seglin of Crosby, Guenzel, Davis, Kessner & Kuester for appellant.

Warren C. Johnson of Cline, Williams, Wright, Johnson & Oldfather for appellee First National.

M. J. Bruckner and W. Scott Davis of Marti, Dalton, Bruckner, O'Gara & Keating, P.C., for class.

Heard before KRIVOSHA, C.J., BOSLAUGH, McCOWN, BRODKEY, and WHITE, JJ., and COLWELL, District Judge.

BRODKEY, J.

This is the second appeal of the above-captioned case to this court. The general factual background of this litigation is set out in our first opinion in *Doyle v. Union Ins. Co.*, 202 Neb. 599, 277 N.W.2d 36 (1979), and will not be repeated here except as pertinent and necessary to understand the issues in this appeal.

This action involves the claim of Willkie, Farr & Gallagher, a New York law firm, for attorney fees allegedly performed for and on behalf of First National Bank & Trust Company of Lincoln, appellee in this appeal, the trustee under a certain trust agreement entered into on March 19, 1973, by and between the old Union Insurance Company (Mutual) and the new Union Insurance Company, a stock company, both of Lincoln, Nebraska, who are referred to in the trust agreement as grantors, and First National Bank & Trust Company of Lincoln, hereinafter referred to as Trustee, or First National. It appears that Willkie, Farr & Gallagher submitted to the Trustee a statement in the amount of $17,552.55 for professional services rendered to the trust during the years 1976 and 1977 on account of the claim by the Internal Revenue Service from the trust for tax payments in connection with the transfer of the assets of the old Union Insurance Company (Mutual) to the new Union Insurance Company (Stock). Willkie, Farr

& Gallagher successfully defended the tax claim by the Internal Revenue Service, and obtained a substantial reduction in the amount of the deficiency claimed. Upon receipt of the invoice of the law firm for such services, the Trustee, on November 30, 1979, filed in the original action in the District Court of Lancaster County what it entitled an "Application." In its application, First National alleged it was trustee for the tax escrow account held for the benefit of policyholders of Union Insurance Company (Mutual), and alleged the receipt of the statement for professional services above referred to from Willkie, Farr & Gallagher, and further alleged that the trustee had not in any manner retained Willkie, Farr & Gallagher to represent the Union Insurance Company (Mutual) policyholders and suggested that the court hold a hearing with reference to a claim of that law firm. The prayer of that application was as follows: "WHEREFORE, this Trustee prays that after due notice and hearing the Court determine whether the claim filed by Willkie, Farr & Gallagher as described above should be paid, and if so, the amount thereof and the party who should make payment, and for such other relief as is just and equitable in the premises."

Following a hearing held on December 18, 1979, the District Court entered its order finding, in material part, as follows: "The court finds that the claim of Willkie, Farr & Gallagher should be and hereby is denied and that all the amount in controversy shall be paid to the policyholders of Union Insurance Company (Mutual) pursuant to the terms of the order of distribution entered by this court." Willkie, Farr & Gallagher has appealed to this court from that order, alleging in its assignments of error: (1) That the trial court erred in denying its claim for attorney fees; and (2) That the trial court erred in refusing to admit in evidence the affidavit and attachments thereto of Jack H. Nusbaum, a member of that firm.

At this point, it will be helpful to examine the facts and background of the original action. *Doyle* originated as a class action suit filed on behalf of the policyholders of the old Union Insurance Company, a mutual company, against the directors of that company. In that action it was alleged that the directors had violated their fiduciary duty by selling the assets of Union (Mutual) to a newly created stock company, Union Insurance Company (Stock), for less than their real value. On appeal, this court affirmed the judgment of the District Court rendered against the directors after trial in the sum of $2,567,500 as damages, which amount was in addition to the $8,300,000 value placed on the dividend declared to the Union (Mutual) policyholders. *In that action, Willkie, Farr & Gallagher represented the defendant directors of Union (Mutual).*

As previously stated, on March 19, 1973, and prior to trial, a trust agreement was entered which created a tax escrow account for the benefit of the Union (Mutual) policyholders, pending a final determination as to the tax status of certain dividends. That trust agreement, dated March 19, 1973, provided that First National was to act as trustee of the account and was to hold the trust funds in escrow with authority to invest the trust assets on favorable terms until such time as the grantors received a final determination of the tax controversy. The grantors of the trust were Union (Mutual) as the original grantor until April 19, 1973, at which time it ceased to exist, and the new Union (Stock) was to succeed to the rights and liabilities of the old Union (Mutual). Specifically, the trust agreement provided, *inter alia*, as follows:

"THIRD: Dividend and Bulk Reinsurance Agreement. This trust agreement arises as a result of a Bulk Reinsurance Agreement which is attached hereto and incorporated herein. *The trust property is a dividend payable to policyholders* of Union Insurance Company (Mutual), dependent upon receipt of favorable ruling

from the Internal Revenue Service all or more fully set out in the Bulk Reinsurance Agreement attached hereto and incorporated herein.

"FIFTH: Termination of Trust. Upon receiving a final determination from the Internal Revenue Service the Grantors shall advise the Trustee of such determination and this trust agreement shall forthwith terminate and the trust property along with all gains arising therefrom of any nature whatsoever shall be returned to the grantors for distribution to the eligible policyholders of Union Insurance Company (Mutual) as they are defined in the attached Bulk Reinsurance Agreement; provided, however, that the Grantors may, with the specific written approval of the Director, Nebraska Department of Insurance, to [sic] terminate this trust upon 30 days notice to the Trustee." (Emphasis supplied).

On December 1, 1977, the U.S. Tax Court rendered its decision with regard to the tax dispute; and, as previously stated, on September 6, 1979, the appellant rendered its bill for attorney fees to First National, following which First National filed its "Application" in the District Court of Lancaster County.

In our original opinion in this matter, we stated: "Whatever the merits of the tax arguments with the Internal Revenue Service, that part of the tax escrow account remaining after final settlement with the Internal Revenue Service was Old Union's property, having arisen either from a refund of past income tax, or reserves for taxes which were not in fact payable. Furthermore, the bulk reinsurance contract specifically provided that the amount remaining would be paid to the policyholders of Old Union. The argument of the appellants on this item is ludicrous and merits no further discussion." *Doyle* at 623, 277 N.W.2d at 48.

Notwithstanding, the appellant contends on appeal that the trust has received a substantial benefit

from the services rendered before the tax court and that this court should impose a contract to prevent unjust enrichment on the part of the Trustee.

Under the terms of the trust agreement, the duties and authority granted to the Trustee were extremely limited. The Trustee was granted authority to invest the assets and the income in certificates of deposit and U.S. Treasury Notes as in the discretion of the Trustee would provide the highest rate of return. The Trustee was also obligated to render semiannual accounts to the grantors and to the director of the Nebraska Department of Insurance. Nowhere does the trust agreement grant authority to the Trustee to conduct any litigation or to retain counsel. Rather, the trust agreement states that upon the dissolution of Union (Mutual) on or about April 19, 1973, Union (Stock) would be deemed the successor grantor of the trust and succeed to all the assets, liabilities, rights, and obligations of the mutual company. It would appear that after the dissolution of Union (Mutual), the obligation to resolve the tax dispute fell to Union (Stock) as the remaining grantor through such counsel as it retained.

The trust agreement also explicitly provided that when the grantors received a final determination from the Internal Revenue Service, it was the responsibility of Union (Stock) as the surviving grantor to advise the Trustee of that determination. Thereafter, the trust agreement would terminate and the trust property would be returned to the grantor for distribution to eligible policyholders of Union (Mutual). It was also provided under the agreement that the Trustee would receive no compensation for its role as Trustee, and the authority as to expenditures was limited to reimbursement for actual expenses incurred. We note that when this agreement was made in 1973, the Nebraska Trustees' Powers Act had not been enacted and the Trustee was reduced to a stakeholder to invest the funds, pending a final determination by the

Internal Revenue Service.

At the hearing held in this matter on December 18, 1979, Robert Kahm, vice president and trust operations officer for First National, testified that the Trustee had not retained the appellant law firm to represent the trust in the action before the tax court. The record discloses that the Trustee executed powers of attorney for the tax years involved to the accounting firm of Touche Ross & Co., at the request of the grantor. No evidence was presented that this power was ever delegated to the appellant. The sole power of attorney given by the Trustee to the appellant pertains to an Internal Revenue Service audit of the trust fiduciary for the taxable year ending January 31, 1975, and does not pertain to the tax deficiency controversy before the tax court.

Under the terms of the trust agreement it is clearly contemplated that a resolution of the tax dispute was to be pursued by the grantors, with the Trustee acting as a mere escrow agent until a final determination by the tax court. Upon such determination, the agreement contemplates the return of the trust property to the grantor, who is required to distribute the trust property to the eligible policyholders of Union (Mutual). It would appear that the appellant firm was hired by the successor grantor, Union (Stock), pursuant to its obligation under the agreement. Any actions taken were those performed pursuant to instructions of the grantor; and nothing in the record indicates any conduct on the part of the Trustee which would lead the appellant to believe that payment for its legal services would be made from the trust assets, which by law belonged to the policyholders of Union (Mutual).

The appellant also urges this court to apply principles of quasi-contract in this case to prevent unjust enrichment on the part of the Trustee. A similar argument was rejected by this court in the case of *In re Estate of Kierstead*, 121 Neb. 423, 237 N.W. 299 (1931), in which case attorneys who represented

certain heirs of the estate sought to recover attorney fees from other heirs who were not represented by the attorneys but who had benefited as the result of a settlement procured by the attorneys. The District Court found for the intervenor attorneys and allowed the recovery of a limited fee. On appeal, this court reversed the holding of the trial court, stating: "'An attorney's claim for professional services against persons *sui juris*, or against the property of such persons, must rest upon a contract of employment, express or implied, made with the person sought to be charged or with his agent. No one can legally claim compensation for voluntary services to another, however beneficial they may be, especially where rendered without his knowledge or consent, nor for incidental benefits and advantages to one, flowing to him on account of services rendered to another by whom the attorney may have been employed. * * * So, where one of several parties, all of whom are equally interested in a cause, employs an attorney to conduct the case for him, and the benefit of such services from the nature of the case extends to all the other interested parties, the other parties, merely by standing by and accepting the benefit of such services without objection, do not become liable for the attorney's fees.'" *Id.* at 426, 237 N.W. at 300.

In the present case, it appears that the appellant performed legal services for the successor grantor under the trust agreement which indirectly benefited the policyholders of Union (Mutual). The plaintiff class was already represented by counsel; and the precedent and logic of *Kierstead* compels us to conclude that appellant is not entitled to attorney fees from the Trustee merely because it claims to have benefited the policyholders of Union (Mutual). We would also note at this point that during the time period for which the appellant seeks payment, the firm of Willkie, Farr & Gallagher was actively opposing the interests of the policyholders of Union (Mutual), as is evident

from the opinion in *Doyle.*

The appellant also contends that the trial court erred by refusing to admit into evidence the affidavit of Jack Nusbaum, an attorney in appellant's law firm. We note that the bill submitted by Willkie, Farr & Gallagher does not itemize the work that was performed or the time spent preparing the case for which it seeks payment from the tax escrow account. The record indicates that no member of the appellant firm was personally present at the hearing to support its claim, and that the affidavit of Nusbaum was not submitted to the court or opposing counsel until the day before the hearing.

In support of its contention that the affidavit in question should have been admitted in evidence by the trial court, the appellant contends that the application filed by First National in this case was in fact a "motion," and that under our statutes, it is proper to use affidavits in connection with motions. Neb. Rev. Stat. § 25-908 (Reissue 1979) defines the term "motion" as follows: "A motion is an application for an order addressed to the court or a judge in vacation, by any party to a suit or proceeding, or one interested therein." Likewise, Neb. Rev. Stat. § 25-1244 (Reissue 1979) provides: "An affidavit may be used to verify a pleading, to prove the service of a summons, notice or other process, in an action, to obtain a provisional remedy, an examination of a witness, a stay of proceedings, *or upon a motion,* and in any other case permitted by law." (Emphasis supplied.) The application of this latter section apparently bothered the trial court, too, as it stated in response to the argument to that effect before it: "I have always thought when they were talking about motion, they were talking about motions that we are used to in pleadings, motion to make more definite and certain, motion for summary judgment and that type of thing."

In a broad general sense, every petition filed at the commencement of an action is, in effect, an application

to the court for an order or rule of the court. It is to be noted, however, that the Trustee in this case instigated this proceeding with reference to a declaration of its liability to pay attorney fees from the escrow account by filing in the original action what it has termed an "Application." In *Wright v. Royse*, 43 Ill. App. 2d 267, 193 N.E.2d 340 (1963), the court held that the word application was a generic term which includes, but is not limited to, motions. In that case, the court stated: "Appellees cite several cases which hold, consistently with the definition contained in Black's Law Dictionary that 'motions' are 'applications.' Appellees then argue that if 'motions' are 'applications,' therefore, all 'applications' are 'motions' and must be made in the form of a written motion, in accordance with prescribed motion procedures. This is a nonsequitur. The word 'application' is a generic term which includes, but is not limited to 'motions.'" *Id.* at 274, 193 N.E.2d at 343. In this connection we have also noted the case *In re Meyer v. Meyer, Admin.,* 138 Ind. App. 649, 215 N.E.2d 556 (1966), which case involved an appeal from a judgment awarding the appellant, a practicing attorney, the sum of $5,000 as an additional fee for professional services rendered as the attorney to the administrator of the estate of Mary Meyer, deceased. In that case the court held that where the duties of an attorney to the administrator were at an end and there was nothing further to be resolved and his connections to the estate were completely severed, even though the estate was kept open, the entry of an award for attorney fees constituted a "final judgment" and not an "interlocutory decree." Although the facts of that case were admittedly somewhat different from the facts of the instant case, we believe there is an analogy between the two situations, notwithstanding in the instant case the "Application" was filed a considerable length of time after the determination of the merits of the original action. We do not believe that the hearing

on the application in this case was a "preliminary, collateral and interlocutory matter" under § 25-1244. The general rule is that an affidavit is not admissible to establish facts material to the issue being tried. *Banks v. Metropolitan Life Ins. Co.*, 142 Neb. 823, 8 N.W.2d 185 (1943). However, even if we were to interpret or consider the "Application" filed in this case as a motion, it would not, we believe, in any way change the validity of the action of the trial court in refusing to accept the affidavit in question into evidence. In *Erdman v. National Indemnity Co.*, 180 Neb. 133, 138, 141 N.W.2d 753, 756 (1966), we held: "'It is within the discretion of the district court to take testimony orally for the determination of issues of fact arising upon motions, *and not a right of either party to compel the adduction of such testimony.*'" (Emphasis supplied.)

After the conclusion of the prior appeal, the judgment fund and the tax escrow account were, in effect, merged for the purpose of distribution. It was at this time that the claim of the appellant for attorney fees from the tax escrow account occasioned the filing of the "Application" by First National. The District Court had jurisdiction over the judgment fund, and properly held the hearing below to determine the validity of the appellant's claim against the tax escrow account. We determine that the order of the trial court was proper and must be affirmed, so that an orderly distribution of the tax escrow fund may be completed. We do not mean to hold or imply that appellant is not entitled to recover from its client for the services rendered, but only that appellant is not entitled to be paid for such services from the tax escrow account represented by the Trustee, First National.

The judgment of the District Court must be affirmed.

AFFIRMED.